IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JEFFREY J. PROSSER | ) | Chapter 7 |
| | ) | Case No. 06-30009 (JFK) |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| JEFFREY J. PROSSER | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | |
| v. | ) | Civil No. 11-136 |
| | ) | |
| JAMES P. CARROLL, CHAPTER 7 | ) | |
| TRUSTEE OF THE BANKRUPTCY | ) | |
| ESTATE OF JEFFREY J. PROSSER, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| ———————————————— | ) | |

**ATTORNEYS:**

**Lawrence H. Schoenbach, Esq.**
Law Office of Lawrence H. Schoenbach
New York, NY

**Norman Anthony Abood, Esq.**
Law Office of Norman A. Abood
Toledo, OH

**Robert F. Craig**
Robert F. Craig, PC
Omaha, NE

    *For the appellant*,

**Samuel H. Israel**
Fox Rothschild, LLP
Philadelphia, PA

**Bernard C. Pattie**
Law Offices of Bernard C. Pattie, P.C.
Christiansted, U.S. Virgin Islands

    *For the appellee.*

# MEMORANDUM OPINION

**GÓMEZ, C. J.**

Before the Court is the appeal of Lawrence H. Schoenbach, Esq. ("Schoenbach"), Robert F. Craig, Esq. ("Craig"), and Norman A. Abood, Esq. ("Abood") (collectively, "the Appellants") from the orders entered in an adversary proceeding by the Bankruptcy Division of this Court on August 17, 2010 and December 9, 2011, sanctioning the Appellants pursuant to 28 U.S.C. § 1927.

## I.  BACKGROUND[1]

The instant appeal arises out of a lengthy bankruptcy proceeding involving Innovative Communication Corporation, a Virgin Islands telecommunications company, and its former owner, Jeffrey J. Prosser. At all relevant times, Prosser was represented by Law Office of Lawrence H. Schoenbach, Robert F. Craig, P.C., and The Law Office of Norman Abood.

On July 31, 2006, Prosser filed a Chapter 11 bankruptcy petition. His petition was subsequently converted to a petition for relief under Chapter 7 of the Bankruptcy Code. Thereafter, James P. Carroll was appointed as the trustee of Prosser's estate. Carroll is represented by Fox Rothschild, LLP ("Fox Rothschild").

During the course of the bankruptcy proceeding, Prosser claimed, pursuant to 11 U.S.C. § 522, that certain property was exempt from the reach of the Bankruptcy Court. Carroll and others filed objections to those claims. Those objections were adjudicated at a trial held in June, 2008 (the "exemptions trial"). Arthur J. Stelzer[2] testified as a lay witness at the exemptions trial.

---

[1]  The factual background is derived from filings in a bankruptcy case (3:06-bk-30009), two adversary proceedings (3:08-ap-3011, 3:10-ap-3001) and a prior appeal to this Court (03:10-cv-08).

[2]  Stelzer was formerly employed as Prosser's "valet and personal assistant." *In re Prosser*, 2011 Bankr.

On October 9, 2009, the Bankruptcy Court denied the exemptions claimed by Prosser (the "Exemptions Order"), finding "clear and convincing evidence of his bad faith and . . . blatant disregard of his obligations as a debtor." In so finding, the Bankruptcy Court relied, in part, on Stelzer's June 2008 trial testimony.

Following the exemptions trial, Carroll and others initiated an adversary proceeding, seeking denial of Prosser's discharge under 11 U.S.C. § 727(a) (the "discharge adversary proceeding"). On December 2, 2009, Prosser noticed Stelzer's deposition. Prosser argued that Stelzer's testimony would (1) "bear directly and adversely on his credibility," (2) "undermine his prior testimony," (3) "evidence his personal and financial need to provide [the bankruptcy trustees] with favorable testimony, and (4) be directly relevant and probative of material issues (e.g., the complained of concealment of assets and alleged destruction of evidence) involved in this case." On December 8, 2009, Carroll sought to prevent the deposition. The Bankruptcy Court ultimately limited the deposition to "new matters" for the sole purpose of "supplement[ing] whatever evidence is already of the record" on issues "relevant to the discharge [adversary proceeding.]"

On December 15, 2009, Carroll moved for the denial of Prosser's discharge based on findings in the Exemptions Order. Carroll argued that Prosser was estopped from relitigating "various factual issues" previously litigated in the exemptions trial.

Stelzer was deposed on January 12, 2010. Issues raised during the deposition included (1) the payment of Stelzer's legal fees for services provided to him during the course of Prosser's bankruptcy proceedings and (2) Stelzer's conversations with Carroll and Fox Rothschild prior to

---

LEXIS 5009, at *14 (Bankr. D.V.I. Dec. 20, 2011).

testifying at the exemptions trial. The deposition focused on whether Carroll and Fox Rothschild, among others, were bribing Stelzer to provide favorable testimony.

During his deposition, Stelzer testified, *inter alia*, as follows:

(1)   "To the best of [his] knowledge," he "[thought]" his legal fees in Prosser's bankruptcy case and related proceedings were paid for by either the Chapter 11 bankruptcy estate or the Chapter 11 trustee's counsel. Stelzer Depo. at 122:23-25, 123:1-2, 130:8-16, 141:2-4 [Civil No. 11-136, ECF 18-1].

(2)   In exchange for payment of his legal fees, "if [he was] called for whatever, just to come tell the truth." *Id*. at 130:17-24, 131:6-8, 141:2-4

(3)   He "didn't talk to any of those people [from the Chapter 7 trustee's office] about [providing] any kind of testimony" at the June 2008 trial. *Id*. at 108:21-25, 109:1-3.

(4)   Prior to the June 2008 trial, Stelzer met with Carroll on an unspecified date for a "dinner meeting." *Id*. at 109:17-18.

(5)   It was his understanding that Carroll asked him to dinner because Carroll "was the trustee of the bankruptcy." *Id*. at 111:21-22.

(6)   He and Carroll only discussed "what it was like to work for Prosser and his family" and "general chitchat." *Id*. at 111:21-25, 112:9-14.

(7)   At the time of the "dinner meeting," he "didn't know about testifying at the [June 2008] trial." *Id*. at 112:9-12.

The Stelzer deposition was monitored telephonically by the Bankruptcy Court. Norman Abood and Lawrence Schoenbach, counsel for Prosser; Theresa Van Vliet and Patsy Zimmerman of Genovese, Joblove & Battista, P.A., counsel for Stelzer; James Lee, Dustin McFaul and Rebecca Petereit of Vinson & Elkins, LLP, counsel for the Chapter 11 trustee; Mark A. Platt and Greg M. Wilkes of Fulbright & Jaworski, LLP, counsel for Rural Telephone Finance Cooperative; and Dana Z. Katz of Fox Rothschild, counsel for Carroll, attended the deposition. At one point during the deposition, Abood sought to inquire of various financial records of

Case: 3:11-cv-00136-CVG-RM   Document #: 21   Filed: 02/14/14   Page 5 of 19

*In re Prosser*
Civil No. 2011-136
Memorandum Opinion
Page 5

Stelzer.[3]  The Bankruptcy Court then questioned Abood as to the relevance of this information to Prosser's discharge.  Abood ultimately explained that "[t]hey're relevant because Mr. Stelzer is being told by the trustees that Mr. Stelzer's testimony will be used to support the allegations of bad acts against Mr. Prosser. That raises his credibility."  Counsel for the Chapter 11 trustee objected.  The Bankruptcy Court ruled as follows:

> I have not seen evidence that Mr. Stelzer has been told any such thing by the trustee. If you want to substantiate that first, Mr. Abood, then perhaps. If in fact he's motivated to lie because the trustees suggested to him to lie, certainly that is relevant and you may pursue that.

Stelzer Depo. at 48:8-14 [Civil No. 11-136, ECF 18-1].  At that point, Katz, an attorney with Fox Rothschild, objected and made the unsworn statement that the

> Chapter 7 trustee has in fact never spoken to Mr. Stelzer outside of the trial testimony during the exemptions proceedings, so I'm not really sure what Mr. Abood is getting at, but I just wanted to make that clear that there have been no communications with Mr. Stelzer whatsoever.

*Id*. 48:15-23.

The following day, on January 13, 2010, the Bankruptcy Court issued an order (the "collateral estoppel order"), in which it precluded Prosser from challenging the Bankruptcy Court's findings in the exemptions trial during the discharge adversary proceeding.

On January 15, 2010, Prosser appealed the collateral estoppel order to this Court.[4]  On January 26, 2010, Prosser moved for an evidentiary hearing (the "Evidentiary Hearing Motion") in that appeal "to determine whether sanctions, disqualification and/or referral for further

---

[3]  While Schoenbach also attended the Stelzer deposition on behalf of Prosser, only Abood questioned Stelzer.

[4]  The notice of appeal and related documents were each signed by Schoenbach, Craig and Abood.  *See* Civil No. 2010-08 [ECF 1].

disciplinary proceedings and/or referral to the appropriate U.S. Attorney should be made against" Carroll and Fox Rothschild, among others. In support of the motion, Prosser stated (1) a "serious question[]" exists as to whether Fox Rothschild "violated [its] duty of candor to the Court" when Katz, on behalf of Fox Rothschild, stated there had been no communications between Carroll and Stelzer prior to the June 2008 trial, and (2) Carroll failed to report for investigation the alleged bribery scheme to the United States Attorney in violation of 18 U.S.C. § 3057.

On January 29, 2010, this Court referred the Evidentiary Hearing Motion to the Bankruptcy Court. The referral order provided as follows:

> Before the Court is the motion of Jeffrey Prosser ("Prosser") for an evidentiary hearing. The premises considered, it is hereby ORDERED that this matter is referred to Bankruptcy Judge Judith K. Fitzgerald for an evidentiary hearing.

January 2010 Order, Civil No. 2010-08 [ECF 9].

Also on January 29, 2010, the Bankruptcy Court held an omnibus hearing in the bankruptcy proceeding, during which William Stassen of Fox Rothschild stated "[i]t does appear that Ms. Katz's statement" made during Stelzer's deposition – that is, that Carroll had never spoken to Stelzer prior to the exemptions trial – "was not entirely accurate." In particular, Stassen stated that he had learned, after Stelzer's deposition, "that the Chapter 7 Trustee, Mr. Carroll, at one point in time prior to our firm of Fox Rothschild being retained to represent him[,] did [] have dinner with Mr. Stelzer way back at the very beginning of the case."

On February 1, 2010, Fox Rothschild filed two fee applications in the bankruptcy proceeding. That same day, Prosser, through Appellants, filed objections thereto (collectively, the "Fee Objections").

Also on February 1, 2010, Prosser, through Appellants, initiated an adversary proceeding (the "Prosser adversary proceeding") against Carroll and Fox Rothschild, among others.[5] In his adversary proceeding complaint (the "Complaint"),[6] Prosser asked that "discovery and a hearing be scheduled to determine specifically whether some or all" of the named defendants, including Carroll and Fox Rothschild, had (1) engaged in a bribery scheme of a lay witness, (2) failed to report to the United States Attorney in violation of 18 U.S.C. § 3057 that reasonable grounds existed warranting investigation of a possible bribery scheme, and (3) violated numerous rules of the ABA Rules of Professional Conduct, including the duty of candor to the Bankruptcy Court. The Complaint incorporated the Evidentiary Hearing Motion.

On February 2, 2010, Prosser, through Appellants, moved for a waiver of conflicts hearing (the "Conflicts Motion"). Prosser claimed that a potential conflict of interest existed between, *inter alia*, Fox Rothschild and Carroll.

On February 12, 2010, Katz filed a certification of counsel "to correct the record based on an inadvertent misstatement [she] made" during Stelzer's deposition (the "Katz Certification"). In particular, Katz stated that subsequent to the deposition, she "learned that the Chapter 7 Trustee had met one time with Mr. Stelzer prior to his deposition in February 2008" and "that this meeting was part of the fulfillment of the Chapter 7 Trustee's duty to investigate issues related to potential estate assets and to assist with the administration of the chapter 7 estate."

---

[5] The Prosser adversary proceeding also included as defendants the Chapter 11 Trustee, Vinson & Elkins, LLP, Genovese, Joblove & Battista, P.A.., Fulbright & Jaworski, LLP, and Alvarez & Marsal.

[6] During the January 29, 2010 hearing in the bankruptcy matter, the Bankruptcy Court advised the parties that this Court's referral would be "opened as a miscellaneous adversary" because "it's going to be a new independent adversary with a life of its own." *See* 03:06-bk-30009, Jan. 29, 2010 Tr. at 113:23-24, 116:4-5. The Bankruptcy Court instructed Prosser to "file it at [sic] the [bankruptcy] case and as an adversary." *Id*. at 116:6-7; *but see* 03:10-ap-3001, March 10, 2010 Mem. Opinion & Order at 2 n.2 (stating Prosser was "ordered to file the [Evidentiary Hearing Motion] . . . in the main bankruptcy case (3:06-bk-30009) . . . . so that the Court could open a Miscellaneous Proceeding but filed this Adversary [Proceeding] instead").

*In re Prosser*
Civil No. 2011-136
Memorandum Opinion
Page 8

In a letter dated February 22, 2010, Carroll provided notice to the Appellants, pursuant to Rule 9011(c) of the Federal Rules of Bankruptcy Procedure, of his intent to file a motion for sanctions against Prosser unless he withdrew the Complaint, Fee Objections and the Conflicts Motion. On March 10, 2010, the Bankruptcy Court dismissed the Prosser adversary proceeding as against Fox Rothschild, and also denied the Conflicts Motion. On March 15, 2010, Prosser voluntarily dismissed the Prosser adversary proceeding against Carroll and withdrew the Fee Objections.

On April 2, 2010, Carroll filed a motion seeking legal fees and expenses against Abood, Craig and Schoenbach pursuant to 28 U.S.C. § 1927 (the "2010 Fee Petition"). In particular, Carroll sought fees and costs for his defense of the Prosser adversary proceeding, the Conflicts Motion, and the Fee Objections. On May 7, 2010, the Bankruptcy Court held oral argument on the 2010 Fee Petition. On August 17, 2010, the Bankruptcy Court granted the 2010 Fee Petition (the "August 17, 2010 Order") against Abood, Craig and Schoenbach. The Bankruptcy Court also directed Carroll to

> submit a bill of costs and expenses, including all attorneys' fees and expenses incurred in the Complaint (10-03001, Adv. Doc. No. 1); the Motion for Waiver of Conflicts Hearing (10-03001, Adv. Doc. No. 2); Debtor's Objection to the Chapter 7 Trustee's Ninth Quarterly Fee Application (06-30009, Doc. No. 2694); and Debtor's Objection to Fox Rothschild LLP's Eighth Quarterly Fee Application (06-30009, Doc. No. 2695).

Thereafter, the Bankruptcy Court held a hearing to determine appropriate fees and costs to award Carroll. Over a year later, on December 9, 2011, the Bankruptcy Court awarded Carroll $137,024.02 in fees and expenses (the "December 9, 2011 Order").

On December 21, 2011, Schoenbach, Craig and Abood initiated the instant appeal of the August 17, 2010 Order and the December 9, 2011 Order (collectively referred to herein as the

"Sanctions Orders"). On appeal, the Appellants challenge the Bankruptcy Court's jurisdiction to enter the Sanctions Orders and contend the Bankruptcy Court abused its discretion in sanctioning them.

## II. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 158, which provides in relevant part: "The district courts of the United States shall have jurisdiction to hear appeals [] from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges" under 28 U.S.C. § 157. *Id.* § 158(a)(1). Since the attorney's fee award has been quantified, the Sanctions Orders are "final" orders. *See Szostek v. Hart*, 123 B.R. 719, 721 (E.D. Pa. 1991) (noting "awards of attorney's fees do not become final until such time as the fees are quantified") (citing *Frangos v. Doering Equip. Corp.*, 860 F.2d 70, 72 (3d Cir. 1988)).

On an appeal, a district court "may affirm, modify, or reverse a bankruptcy [court's] [] order, or . . . remand with instructions for further proceedings." FED. R. BANKR. P. 8013. The primary question before a court reviewing the imposition of sanctions "is whether the sanctioning court abused its discretion." *Fellheimer, Eichen & Braverman v. Charter Technologies*, 57 F.3d 1215, 1223 (3d Cir. 1995) (citation omitted). "[A]n abuse of discretion will be found if the bankruptcy judge acted in an irrational, arbitrary or capricious manner clearly contrary to reason and not justified by the evidence." *In re Murpenter LLC*, 2012 U.S. Dist. LEXIS 180837, at *7 (E.D. Pa. Dec. 20, 2012) (citation omitted); *see also In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999) (explaining an abuse of discretion exists if the "court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an

improper application of law to fact")(citation omitted).

While the ultimate decision to award sanctions is reviewed for an abuse of discretion, the bankruptcy court's underlying factual findings leading to that conclusion are reviewed for clear error, and its legal conclusions are reviewed de novo. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81 (3d Cir. 1988); FED. R. BANKR. P. 8013; *accord In re Barbel*, Civil No. 01-221 (RLF), 2004 U.S. Dist. LEXIS 19417, at *2 (D.V.I. Sept. 21, 2004). A finding of fact is clearly erroneous when it is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 361 (3d Cir. 2002); *see In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) ("A factual finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.") (internal quotation marks omitted); *Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 233 (7th Cir. 1988) ("To be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish.") (alterations added).

### III. ANALYSIS

Schoenbach, Craig and Abood raise the following issues on appeal:[7]

(1) "Whether the Bankruptcy Court acted beyond the scope of this Court's referral by going beyond holding an evidentiary hearing with a resulting report and instead ordering sanctions pursuant to 28 U.S.C. § 1927;"

(2) "Whether the Bankruptcy Court erred in sanctioning Appellants for requesting an evidentiary hearing (based on the deposition testimony of a lay witness) to determine whether the Chapter 11 and Chapter 7 Trustees, and their respective counsel, had

---

[7] The Court identifies the issues on appeal consistent with its analysis herein and not in the order presented by the Appellants.

    engaged in conduct that was unethical and possibly criminal;"

(3) "Whether the Bankruptcy Court erred as a matter of law and abused its discretion in assessing sanctions against Appellants under 28 U.S.C. §1927 based on their having filed the Motion that resulted in this Court's Order referring the matter to the Bankruptcy Court;" and

(4) "Whether the Bankruptcy Court erred as a matter of law and abused its discretion in sanctioning Appellants in the amount of $137,024.02."

## A. Bankruptcy Court's Authority to Impose Sanctions under § 1927

Schoenbach, Craig and Abood first assert that the bankruptcy judge erred by going beyond the scope of her reference and imposing sanctions. The United States Court of Appeals for the Third Circuit has had occasion to address this issue.

In *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90 (3d Cir. 2008), a bankruptcy court ruled that it could not impose sanctions under § 1927. The district court affirmed. On appeal, the Third Circuit reversed and held that the bankruptcy court "had the authority to impose sanctions . . . under § 1927." *Id*. at 105. That authority is not undermined where, as here, a referral is made.[8]

Accordingly, the bankruptcy court did not exceed its authority by imposing sanctions under § 1927. While the Court concludes the bankruptcy court was within its authority to consider and impose sanctions under § 1927, the Court's analysis does not end here. The remaining issues raised by the Appellants focus on whether the Bankruptcy Court abused its discretion by imposing sanctions here.

---

[8] Indeed, the bankruptcy court is "a unit of the district court," *In re Schaefer Salt Recovery, Inc.*, 542 F.3d at 105, which is clearly authorized to impose sanctions under § 1927.

*In re Prosser*
Civil No. 2011-136
Memorandum Opinion
Page 12

B.     **Legal Standard for the Imposition of Sanctions**

Pursuant to 28 U.S.C. § 1927,

> [a]ny attorney . . . in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions for attorney misconduct under § 1927 should be imposed "only in instances of a serious and studied disregard for the orderly process of justice." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986). To that end, the imposition of sanctions under § 1927 requires a finding of bad faith on the part of the offending attorney. *Zuk v. Eastern Pa. Psychiatric Inst. of the Medical College*, 103 F.3d 294, 297 (3d Cir. 1996); *see Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990) (explaining the Third Circuit has interpreted the "term 'vexatious' . . . as requiring a showing of bad faith"). "Although the court need not make an express finding of bad faith in so many words, there must at least be statements on the record which this court can construe as an implicit finding of bad faith." *Zuk*, 103 F.3d at 298 (internal citation omitted); *accord In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, 189 (3d Cir. 2002); *see Loftus v. SEPTA*, 8 F. Supp. 2d 458, 461 (E.D. Pa. 1998) ("When a claim is advocated despite the fact that it is patently frivolous or where a litigant continues to pursue a claim in the face of an irrebuttable defense, bad faith can be implied."); *see Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000) (stating "bad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay") (internal quotation marks omitted).

"Bad faith" in the context of § 1927 may be shown through "the intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay." *Ford v.*

*Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986); *see also Hicks v. Arthur*, 891 F. Supp. 213, 215 (E.D. Pa. 1995) (holding that "[bad faith] can be demonstrated either by showing an ulterior motive, or misconduct such as knowingly using perjured testimony, citing as binding authority overruled or non-binding cases, or otherwise misrepresenting facts or law to the court."). Additionally, "even if a lawsuit was initially filed in good faith, sanctions may be imposed on an attorney for all costs and fees incurred after the continuation of the lawsuit which is deemed to be in bad faith." *Loftus v. SEPTA*, 8 F. Supp. 2d 458, 461 (E.D. Pa. 1998).

C. The Bankruptcy Court's Imposition of Sanctions under § 1927

In the Bankruptcy Court's August 17, 2010 Order, it concluded that the Appellants "unreasonably and vexatiously multiplied proceedings in bad faith . . . by filing against Trustee Carroll and Fox Rothschild" the Complaint, the Fee Objections and the Conflicts Motion. *See* August 17, 2010 Order. The Bankruptcy Court's order gives the Court some pause.

First, neither the Complaint nor the Fee Objections multiplied the Prosser adversary proceeding. The language of § 1927 makes clear that it only applies to unnecessary filings after the lawsuit has begun. *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65 (1st Cir. 2008) (explaining "a lawyer cannot violate section 1927 in the course of commencing an action"); *see In re Schaefer Salt Recovery, Inc.*, 542 F.3d at 101 (stating "§ 1927 explicitly covers only the multiplication of proceedings that prolong the litigation of a case and likely not the initial pleading, as the proceedings in a case cannot be multiplied until there *is* a case") (emphasis in original); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1225 (10th Cir. 2006) (holding the "unambiguous statutory language [of § 1927] necessarily excludes the complaint that gives birth to the proceedings, as it is not possible to multiply proceedings until after those proceedings have

*In re Prosser*
Civil No. 2011-136
Memorandum Opinion
Page 14

begun"). Accordingly, the Appellants may not be sanctioned under § 1927 for filing the Complaint.

Sanctions for the Fee Objections are similarly problematic. It is well established that "sanctions under § 1927 must only impose costs and expenses that result from the particular misconduct *in the litigation at issue.*" *Dashner v. Riedy*, 197 Fed. Appx. 127, 133 (3d Cir. 2006) (citation omitted)(emphasis added). The litigation at issue here is the Prosser adversary proceeding. The Fee Objections were filed in Prosser's bankruptcy case. Clearly, they were not filed in the "litigation at issue." Thus, the Appellants also may not be sanctioned under § 1927 for filing the Fee Objections.[9]

Second, the conclusory findings of the Bankruptcy Court prevent this Court from conducting a meaningful review as to whether the Appellants protracted the litigation against Fox Rothschild and Carroll in a vexatious manner by their continued prosecution of Prosser's claims after the filing of the Complaint. With respect to the litigation against Fox Rothschild, the Bankruptcy Court stated, without elaboration, that,

> the alleged 'lack of candor' of a Fox Rothschild attorney was no such thing. The statement was a mistake, promptly corrected, and the matter could have been resolved without this suit by a simple phone call between counsel and the subsequent corrected statement to the Court. . . . [T]he litigation against Fox Rothschild should never have been initiated.

August 17, 2010 Order [ECF 1-1].

The Appellants' concern that Stelzer's testimony during the June 2008 trial had been influenced by communications with Carroll prior thereto is a fair interpretation of the record as

---

[9] This is not to say, however, that the Bankruptcy Court lacks authority to impose sanctions for filing the Complaint and the Fee Objections. The Bankruptcy Court is vested with authority, apart from § 1927, to impose sanctions on counsel. In particular, sanctions pursuant to Rule 9011(c)(1)(B), sanctions under 11 U.S.C. § 105 and a court's inherent power to sanction are alternative "sanctioning tools" available to the Bankruptcy Court. *Miller v. Miller (In re Miller)*, 730 F.3d 198, 206 (3d Cir. 2013).

presented to this Court. Obviously Stelzer's testimony and Katz's statement as to whether any such communications took place were in direct contradiction to one another. The Third Circuit has counseled that "[b]ad faith should not be lightly inferred, and counsel should be given *significant leeway* to pursue arguments on a client's behalf." *Lewis v. Smith*, 480 Fed. Appx. 696, 699 (3d Cir. 2012) (alteration and emphasis added). While Fox Rothschild relies on the oral correction to the record, which preceded the filing of the Complaint, the correction was not made by Katz. In fact, it was not until *two weeks after the initiation of the litigation* against Fox Rothschild that Katz filed her written correction. As such, the Court does not view the record as supporting a determination that the Appellants operated outside the bounds of zealous representation of their client when they pursued the litigation against Fox Rothschild, at least up until the filing of the Katz Certification.

     The record suggests, however, that the Appellants were aware that Fox Rothschild had reversed its position shortly after the commencement of this litigation and in particular, at the point at which the Katz Certification was filed. *See Salvin v. Am. Nat'l Ins. Co.*, 281 Fed. Appx. 222, 225 (4th Cir. 2008) (affirming district court's finding that counsel's refusal to dismiss a claim once he knew his client's claim lacked merit was "sufficient to support a determination that [counsel] acted in bad faith"). Pursuing a litigation position after it becomes apparent that the asserted position is meritless may lead to a colorable claim of bad faith. *Loftus v. SEPTA*, 8 F. Supp. 2d 458, 462 (E.D. Pa. 1998) (stating "[a]s an officer of the court, [counsel] was not free to press on with a meritless claim until forced to surrender by the legal artillery of his adversaries" and "by failing to withdraw" the case once it lost legal merit, counsel acted in bad faith) (alterations added); *Murphy v. Hous. Auth. & Urban Redevelopment Agency*, 158 F. Supp. 2d

438, 451 (D.N.J. 2001) (stating under § 1927, "only those fees and costs associated with 'the persistent prosecution of a meritless claim' may be awarded") (quoting *Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 875 (5th Cir.1988)). In this case, though, the Bankruptcy Court simply made the broad statement that "the litigation against Fox Rothschild should never have been initiated." *See* August 17, 2010 Order ¶ 1. The order lacks any explanation for the Bankruptcy Court's finding that Katz's "statement was a mistake." *Cf. Gundacker v. Unisys Corp.*, 151 F.3d 842, 849 (8th Cir. 1998) (affirming district court's imposition of sanctions pursuant to § 1927 based on findings that counsel "disobeyed court orders, violated his duty as an officer of the court by making false representations, spoke to at least one member of the press concerning this and an ongoing, sealed *qui tam* action, and made various threats directed at the court"). Similarly, the Bankruptcy Court's order does not develop the legal standard or factual basis to conclude in such a summary fashion that there was no legal merit to the litigation against Fox Rothschild.[10]

Also, the litigation against Fox Rothschild was not marked by months of litigation or voluminous filings. Indeed, the litigation against Fox Rothschild was of extremely short duration, beginning February 1, 2010 and terminating just over six weeks later on March 10, 2010. Moreover, a review of the docket indicates proceedings involving the litigation against Fox Rothschild were limited to the following: (1) the motion to dismiss the Complaint, a response and a reply; (2) Prosser's supplement to the Evidentiary Hearing Motion; and (3) a pretrial and discovery conference regarding the Complaint. The Bankruptcy Court did not

---

[10]  The Court hastens to note that legal merit for a colorable claim should not be equated with what is required for a winning claim.

explain how any of these actions or any others taken by the Appellants in pursuit of the claim against Fox Rothschild unreasonably multiplied the proceedings.

With respect to the litigation against Carroll, Prosser alleged that Carroll, as trustee, had an obligation under 18 U.S.C. § 3057 to refer the alleged bribery scheme to the U.S. Attorney upon learning of the scheme. The August 17, 2010 order, however, contains no factual findings as to this allegation. The Court's independent review of the record suggests on the one hand that Prosser may have had a reasonable, good faith basis for pursuing the litigation against Carroll, at least initially. For example, during a February pretrial and discovery conference, the Bankruptcy Court, after hearing argument regarding discovery concerning the alleged bribery scheme, stated as follows:

> I am going to permit discovery. This is a very serious allegation, and we're going to get to the bottom of it one way or another. So discovery will take place. Whether it's necessary as to Mr. Carroll, frankly, *I'm not sure*. *There doesn't seem to be any issue* concerning Mr. Carroll and his law firm in these alleged bribery allegations . . . .

February 26, 2010 Hr'g Tr. at 98:6-11 [3:10-ap-3001, ECF 60] (emphasis added). This statement suggests that further investigation of Carroll was not so beyond the pale as to be deemed for an unreasonable and vexatious purpose. Furthermore, on March 11, 2010, the Bankruptcy Court directed the United States Trustee to refer the alleged bribery scheme to the United States Attorney.[11] This referral suggests the Appellants' claim against Carroll pursuant to 18 U.S.C. §

---

[11] During a hearing held on March 30, 2010, the Bankruptcy Court explained as follows:

> I did ask the U.S. Trustee's Office . . . to refer this to the United State Attorney . . . . But, I have said consistently that I did so only because the allegations are serious. And, frankly, I don't know what the outcome of those allegations will be. It may be that the request for this relief itself should be referred to the U.S. Attorney, and as a result I thought the U.S. Attorney should be aware of the entire complaint. There is no basis, as I am aware yet, for any indication that there has been a bribery of Mr. Stelzer or Mr. Stelzer's counsel. That is what the evidentiary hearing is to set forth,

3057 was not for dilatory or aggressive litigation practices, but rather the legitimate zeal of attorneys representing their client.  On the other hand, the Bankruptcy Court's oral comments during the May 7, 2010 hearing suggest otherwise:

> "With respect to Mr. Carroll, the fact that he met with Mr. [Stelzer] well in advance of any of these alleged bribery issues . . . [,] I also indicated that I saw no basis for the claim against Mr. Carroll.  I didn't see it in the motion, and I didn't see it subsequently."

May 4, 2010 Hr'g Tr. at 125:25 – 126: 1-7 [3:10-ap-3001, ECF 277-7].  In short, the absence of any explanation regarding whether the Appellants' pursuit of litigation against Carroll was in bad faith requires reversal of the sanctions decision.

Finally, the litigation against Carroll was of limited duration, ending just five days after the litigation against Fox Rothschild.  Indeed, following the Bankruptcy Court's referral of the alleged bribery matter to the United States Trustee, Prosser promptly voluntarily dismissed the action against Carroll on March 15, 2010.  Moreover, a review of the docket indicates proceedings involving the litigation against Carroll were limited to the following: (1) the motion to dismiss the Complaint, a response and a reply; (2) Prosser's Conflicts Motion and Carroll's objection thereto; (3) Prosser's supplement to the Evidentiary Hearing Motion; (4) a pretrial and discovery conference regarding the Complaint; and (5) a hearing on the motion to dismiss.  The lack of findings explaining how or in what manner the pursuit of litigation against Carroll multiplied the proceedings renders a meaningful review impossible.

---

whether [] there is [] reasonable grounds, to believe that it happened. That's all.  So, I cannot agree that the reference to the U.S. Attorney's Office is the means all and end all. The burden here, as I understand it, is to substantiate whether there is reasonable grounds and I haven't yet heard the evidence to determine whether there are such reasonable grounds.

*See* 3:10-ap-3001, March 30, 2010 Tr. at 9:1-20 [ECF 156]; *see also id*. [324-2].

## IV.    CONCLUSION

For the reasons stated herein, the Court will vacate the Bankruptcy Court's August 17, 2010 Order and the December 9, 2011 Order and remand this matter for further proceedings consistent with this Memorandum Opinion.  An appropriate Order follows.

S_____
**Curtis V. Gómez**
Chief Judge